## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

WALTER JAMES,

      Plaintiff,

vs.                                      CASE NO. 3:11-cv-226-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.
_____

## ORDER AND OPINION

This case is before the Court on Plaintiff's complaint (Doc. #1).  Plaintiff seeks review of the final decision of the Commissioner of Social Security that denied Plaintiff's claims for disability insurance benefits (DIB) and for supplemental security income (SSI) disability payments.  *Id.*  This Court has authority to conduct the requested review.  42 U.S.C. § 405(g).

Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #12, Plaintiff's Brief).  Defendant filed his brief in support of the decision to deny disability benefits (Doc. #13, Defendant's Brief).  With the permission of the Court, Plaintiff filed a reply memorandum (Doc. #16, Plaintiff's Reply Brief).  The Commissioner has filed the transcript of the underlying administrative record and evidence (hereinafter referred to as "Tr." followed by the appropriate page number). Both parties consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by the Order of Reference dated May 19, 2011 (Doc. #10).

The Court has reviewed the record and has given it due consideration in its entirety, including the arguments presented by the parties in their briefs and the materials provided in the transcript of the underlying proceedings. Upon review of the record, the Court found the issues raised by Plaintiff were fully briefed and concluded oral argument would not benefit the Court in making its determinations. Accordingly, the matter has been decided on the written record. For the reasons set out herein, the Commissioner's decision is **REVERSED and the case is REMANDED** for additional proceedings.

## I. Procedural History

Plaintiff, Walter James, filed for DIB and SSI on August 26, 2008, alleging disability as of June 1, 2008 (Tr. 116-19, 120-23). His initial applications were denied, as was his request for reconsideration (Tr. 57-60, 63-77). He timely requested a hearing, which was ultimately held on May 7, 2010, in Greenwood, South Carolina, before Administrative Law Judge (ALJ) Arthur L. Conover (Tr. 26-56). Plaintiff appeared and testified at the hearing, as did vocational expert (VE) Carroll Crawford. Plaintiff was represented throughout the hearing by Jeremy Kilpak (Tr. 26).[1] On June 3, 2010, the ALJ issued an unfavorable decision (Tr. 12-25). Plaintiff requested review of the decision by the Appeals Council (AC); however, the AC denied his request, making the hearing decision the final decision of the Commissioner (Tr. 1-5). Plaintiff's current counsel of record, Mr. Erik Berger, Esq., filed the instant complaint in federal court on March 9, 2011 (Doc. #1) .

---

[1]It is unclear in the record whether Mr. Kilpak represented Plaintiff as an attorney or as a lay representative (*see* Tr. 26, 28 concerning Mr. Kilpak's presence at the administrative hearing; *but see* Tr. 61-62 reflecting the Social Security Fee Agreement between Plaintiff and attorney Brad Myler).

## II.  Standard of Review

A plaintiff is entitled to disability benefits under the Social Security Act only if he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c (a)(3)(A). For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits.  *Patterson v. Bowen*, 799 F.2d 1455, 1456, n. 1 (11th Cir. 1986).

The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i-v); 416.920(a)(4)(i-v)2[2]; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  Plaintiff bears the burden of persuasion through step four, while at step five the burden shifts temporarily to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than

---

[2]Unless otherwise specified, all references to 20 C.F.R. will be to the 2011 edition. As the Regulations for SSI disability payments mirror those set forth for DIB on the matters presented in this case, from this point forward the Court may refer only to those sections in 20 C.F.R. pertaining to part 404 and disability insurance benefits.

a scintilla, but less than a preponderance. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Substantial evidence is comprised of relevant evidence that a reasonable person would accept as adequate to support a conclusion. *Foote*, 67 F.3d at 1560; *Moore*, 405 F.3d at 1211.

When the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the Court does not re-weigh the evidence, but determines whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that Plaintiff is not disabled under the Social Security Act. *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

In all Social Security disability cases, the plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments. *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless

4

he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.").   It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove disabling physical or mental functional limitations.   20 C.F.R. § 404.1512(c).

### III.  Statement of the Facts

Plaintiff was born on July 7, 1964 (Tr. 116).   Thus, he was 45 years old at the time of the ALJ's decision.   Mr. James has a high school education and past relevant work with a bottled water company in delivery and sales, and with a manufacturing company in small parts assembly (Tr. 36-37, 49-50).   For purposes of his Title II disability claim, Plaintiff was last insured for benefits through December 31, 2011 (Tr. 124).   In his decision, the ALJ found Plaintiff suffers from the following "severe" impairments: post traumatic stress disorder (PTSD), affective disorder and hernias (Tr. 17).

At the hearing, Mr. James testified that he has pain from his hernias, he suffers from post traumatic stress disorder associated with his knowledge of the bombing of the marine barracks in Beirut, even though he was not physically in Beirut, and he had a substance abuse problem, from which he had been "clean" since the end of 2007 (Tr. 33-41).   Plaintiff was in the Marine Corps from 1983 to 1985 (Tr. 33).   Plaintiff's history of cocaine dependence reportedly spans twenty years prior to 2007 (Tr. 38-39).   Plaintiff also testified he checked himself into the "domiciliary program" with the VA in September 2008 because he was afraid "to go it alone" and he "felt safe at VA hospitals" (Tr. 42).   Plaintiff stated he does not really feel safe anywhere and he does not trust anyone, including his wife (Tr. 44-45).   He further testified he still has hallucinations in which he hears voices that scare him (Tr. 45). Plaintiff stated he spends most of his time just sitting around, sometimes watching

5

television, but mostly trying to figure out why that bombing happened in Beirut (Tr. 46). Plaintiff testified he probably does not get out of bed on ten days during the month (Tr. 47).

Plaintiff has been seen and treated for mental problems from at least early 2008 (*see* Tr. 210).  The record before the ALJ revealed Plaintiff was first diagnosed with schizoaffective disorder and PTSD in July 2008 (Tr. 206) and with unspecified mood disorder in March 2008 (Tr. 210).  Through the date of the ALJ's decision, Plaintiff had treated for his mental disorders primarily at the Veterans' Affairs medical centers in Orlando, Florida and Augusta, Georgia (Tr. 201-83, 328-417, 426-52; *see also* Tr. 20). Throughout the course of Plaintiff's medical history, Plaintiff has been evaluated and treated by a number of mental health practitioners, including at least three different psychiatrists (*see, e.g.*, Tr. 201-83; 426-440).  The record contains treatment notes and evaluations from psychiatrists Dr. Karl Isaacs ( *see, e.g.*, Tr. 258-63), Dr. Ananda Pathiraja (*see, e.g.*, Tr. 426-29) and Dr. Samuel Mendoza (*e.g.*, Tr. 432-33, 436).

From July 2008 through January 2010, Plaintiff was evaluated by mental health professionals using the Global Assessment of Functioning (GAF) scale on at least nineteen (19) separate occasions (Tr. 221, 237, 239, 242, 248, 251, 263, 346, 369, 373, 380, 387, 392, 398, 407, 427, 429, 431, 433).[3]  Plaintiff's highest GAF was 55, which was assessed

---

[3]The Global Assessment of Functioning Scale (GAF) was designed by mental health clinicians to rate the psychological, social and occupational functioning of an individual on a mental health scale of 0-100.  A GAF score of 41-50 describes "serious symptoms" and includes "serious impairment in the social, occupational or school functioning."  A GAF score of 51-60 describes "moderate symptoms" and includes only moderate difficulty in functioning.  A GAF score of 61-70 indicates "some mild symptoms," but generally functioning "pretty well, has some meaningful interpersonal relationships."  A GAF score of 71-80 indicates that if symptoms are present, they are transient and expectable reactions to psycho-social stressors with no more than slight impairment in social, occupational or school functioning.  DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, DSM-IV,

on three occasions (Tr. 373, 392, 398). Plaintiff was determined to be functioning at a GAF score of 45 or 50 the remaining sixteen times (Tr. 221, 237, 239, 242, 248, 251, 263, 346, 369, 380, 387, 407, 427, 429, 431, 433). These scores reflect that during the noted period of time Plaintiff was found to have serious symptoms, including serious impairment in social, occupational or school functioning, the majority of the time.

In his decision, the ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b); except only occasional pushing/pulling with lower extremities; limited walking at the job site; occasional climbing of ramps or stairs, stooping, kneeling, crouching or crawling; no climbing of ladders, ropes or scaffolds; simple, routine work; avoidance of large crowds in the work place; not required to wait on the public as customers; avoidance of team-type interaction with co-workers; and working alone or with a small group.

(Tr. 17.)

At the hearing, the ALJ obtained testimony from vocational expert Carroll Crawford (Tr. 51-56). The judge posed a hypothetical question to the VE, which specified an individual with Plaintiff's education and RFC (Tr. 51-53). The VE testified that Plaintiff is able to perform the demands of his past relevant work as a small parts assembler (*see* Tr. 51).

The ALJ accepted the testimony of the vocational expert and consequently found Plaintiff not disabled at step four of the five step sequential evaluation process (Tr. 21).

---

32-34 (4th ed., American Psychiatric Assoc. 2000).

## IV. Analysis

Plaintiff raises two issues on appeal.  First, he argues the ALJ failed to properly evaluate the medical opinion evidence from Dr. Karl Isaacs, M.D., who was one of Plaintiff's treating mental health physicians.  Plaintiff's Brief at 1, 9-14.  Second, Plaintiff contends the administrative law judge failed to account for Plaintiff's moderate limitations in maintaining concentration, persistence or pace in the hypothetical questions to the VE and in the RFC assessment of Plaintiff's abilities.  Plaintiff's Brief at 1, 15-20.

Defendant argues that substantial evidence supports the ALJ's overall decision finding Plaintiff was not disabled under the Social Security Act (Defendant's Brief at 3-13).  Defendant specifically claims substantial evidence supports the ALJ's determination of Plaintiff's residual functional capacity (D's Brief at 5-6).  With regard to Plaintiff's RFC, Defendant argues the ALJ properly considered and weighed the record evidence, including the assessments of Plaintiff's limitations by his treating sources (D's Brief at 6-13).

Upon review and consideration of the ALJ's decision and the record evidence, the Court finds error on the narrow issue of whether the ALJ properly weighed the opinion evidence of Dr. Isaacs.[4]  Contrary to Defendant's assertions, this error requires remand of the case for additional proceedings.  "The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."  *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (citing *Knipe v. Heckler*, 755 F.2d 141, 149 n. 16 (10th Cir.1985) and  *Dong Sik Kwon v. INS*, 646 F.2d 909, 916 (5th Cir.1981) (en banc)).

_____

[4]The Court finds it unnecessary to address the sufficiency of Plaintiff's assessed residual functional capacity.  Upon remand, the ALJ must reassess Plaintiff's RFC in light of the weight the ALJ determines to give the medical opinion evidence.

*Post hoc* rationalizations set forth in Defendant's Brief will not cure this defect in the ALJ's decision.  *See Baker v. Comm'r of Soc. Sec.*, 384 Fed. Appx. 893, 896 (11th Cir. 2010) (noting the Supreme Court's holding that a court may not accept appellate counsel's post hoc rationalizations for defective agency decisions).[5]

### *Medical Opinion Evidence of Treating Physicians*

The case law and the Regulations require the ALJ to give substantial weight to the opinion, diagnosis and medical evidence of a treating physician, including a treating psychiatrist, unless there is good cause to do otherwise.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d at 583; 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).

The Eleventh Circuit has concluded "good cause" exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or, (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.  *Phillips v. Barnhart,* 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d at 1440).  An ALJ must clearly articulate his reasons for electing to disregard the opinion of a treating physician.  *Id.* at 1241.

---

[5]Unpublished opinions may be cited as persuasive on a particular point.  The Court does not rely on unpublished opinions as precedent.  Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 32.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

Here, the record reflects Dr. Isaacs, one of Plaintiff's treating psychiatrists at the VA Medical Center in Orlando, Florida, conducted mental status examinations of Plaintiff on one occasion in July 2008 (Tr. 258-263) and on three occasions in December 2008 (Tr. 361-70).  Additionally, on December 19, 2008, Dr. Isaacs completed a Mental Capacity Assessment  form, in which he found Plaintiff had "Marked" limitations in several work-related activities and "Extreme" limitations in his ability to maintain attention and concentration for extended periods of time (Tr. 441).[6]  On the Mental Capacity Assessment form, Dr. Isaacs reported Plaintiff was markedly limited in: (1) the ability to understand and remember detailed instructions; (2) the ability to carry out detailed instructions; (3) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (4) the ability to sustain an ordinary routine without special supervision; (5) the ability to work in coordination with or proximity to others without being distracted by them; (6) the ability to complete a normal workweek without interruptions from psychologically based symptoms; (7) the ability to interact appropriately with the general public; (8) the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and, (9) the ability to accept instructions and respond appropriately to criticism from supervisors (Tr. 441-42).  Additionally, Dr. Isaacs marked that Plaintiff would likely have four or more absences from work in an average month (Tr. 442).  The ALJ did not state what weight was afforded Dr. Isaacs' opinion of Plaintiff's work related limitations.  ALJ Conover merely found the medical source statements of Dr. Isaacs

---

[6]The assessment form defines the severity of the limitation as "Marked" if "[t]here is serious limitation" in the identified area and the "ability to function is severely limited but not precluded" (Tr. 441).  Limitations are found to be "Extreme" if "[t]here is major limitation" in the identified area and there is "no useful ability to function in [that] area."  *Id.*

and Dr. Lawrence Scalzo were "not totally supported by the evidence when considered in its entirety" (Tr. 20).[7]

In *Sharfarz v. Bowen*, 825 F.2d 278 (11th Cir. 1987), the court found it necessary for the ALJ to "state with particularity the weight he gave the different medical opinions and the reasons therefor." *Id.* at 279 (internal citation omitted). For the Court to accept the ALJ's determination to give little weight to the treating physician, the Court must conclude that the determination was supported by substantial evidence. *Richardson v. Perales*, 402 U.S. at 390. In this instance, the ALJ does not even state the weight he gave Dr. Isaacs' or Dr. Scalzo's opinion evidence.

In very limited circumstances, the failure of an ALJ to state the weight given to the medical opinion evidence from a treating physician may be harmless error. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528 (6th Cir. 2001) (the court found that the ALJ's failure to discuss a physician's opinion constituted harmless error where the ALJ had attributed limitations of the claimant that were consistent with the doctor's opinion). In this instance, however, the weight afforded the medical opinions could very well make a difference in Plaintiff's assessed RFC.

Although the ALJ has wide latitude to evaluate the weight of the evidence, he must do so in accordance with prevailing precedent. Social Security Ruling 96-8p directs ALJs to base their RFC assessments on "*all* of the relevant evidence in the case record." SSR

---

[7]It appears Dr. Lawrence Scalzo, D.O., completed a Residual Functional Capacity Questionnaire as a "substitute [doctor] for Dr. Wills," both of whom were on staff at the Orlando VA Medical Center (see Tr. 445-47). Dr. Scalzo stated the limitations he marked for Plaintiff had existed since 1986, thus indicating he had access to Plaintiff's medical records at the Orlando VA Medical Center that dated from 1986 forward (*see* Tr. 447; see also Tr. 41-42 (discussion with ALJ concerning Dr. Scalzo's assessment)).

96-8p, 1996 WL 374184 at *5 (S.S.A. 1996) (emphasis added); *see also Nguyen v. Chater*, 172 F.3d 31, 34 (1st Cir. 1999) (holding an ALJ must base his RFC assessment on all relevant evidence including observations of treating physicians and others, medical records, and the description of the claimant's limitations).  Social Security Ruling 96-8p further provides that "[t]he adjudicator must consider all allegations of physical and mental limitations or restrictions."  *Id.*  Here, not only does the ALJ fail to state the weight given to Dr. Isaacs' opinion evidence, the ALJ also failed to discuss the inpatient treatment notes from the Augusta VA Medical Center in March 2010, in which the examining source noted Plaintiff was "extremely alienated from others," . . . "emotionally unstable," . . . and "prone to aggressive behavior and substance abuse, and unlikely to respond well to interpersonal therapy" (Tr. 449).

The ALJ's blanket statement that two of the medical opinions in the record are not totally supported by the record evidence is insufficient for the Court to determine how this opinion evidence was weighed.  Thus, the Court is unable to find the ALJ's properly weighed the opinions of Dr. Isaacs or Dr. Scalzo.  In making this determination, the Court has declined, as it must, to re-weigh the evidence in search of support for the ALJ's decision.  *Bloodsworth v. Heckler*, 703 F.2d at 1239.

Moreover, the ALJ's finding that the "record does not contain any opinions from treating or examining physicians indicating the claimant . . . has limitations greater than those determined in this decision" is contradicted by Dr. Isaacs' opinion evidence that reports  Plaintiff is markedly limited in numerous work-related areas, is extremely limited in his ability to maintain concentration and concentration over extended periods of time, and is likely to miss four or more days of work per month (compare Tr. 20 with Tr. 441-42).

12

Furthermore, the undersigned questions whether Plaintiff's hospitalization, for a substance abuse relapse from February 28, 2010 through March 22, 2010, would not be considered an episode of decompensation, which conflicts with the ALJ's finding Plaintiff had "not experienced an episode of deterioration or decompensation" (*see* Tr. 20 (ALJ's finding); Tr. 438 (Physician Discharge Note); Tr. 448-49 (Inpatient Mental Health Note); and, Tr. 39 (discussion at administrative hearing regarding February 2010 relapse).

While it is true the determination of disability under the Social Security Act is reserved to the Commissioner, the ALJ is nevertheless required to consider and expressly state reasons for discounting opinions of treating medical doctors. *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990) (stating an ALJ "should state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence"). In this case, the weight afforded the medical opinions could very well make a difference in Plaintiff's assessed residual functional capacity. The Eleventh Circuit has noted that the focus of any RFC assessment is on the doctors' evaluations of a claimant's condition and the resulting medical consequences. *Lewis v. Callahan*, 125 F.3d at 1440. Upon reconsideration of all medical opinions found in the record, the ALJ shall reassess Plaintiff's residual functional capacity.

As it is impossible for the Court to tell if the ALJ properly considered and weighed all the evidence in the record, this case must be remanded. *See generally*, *Owens v. Heckler*, 748 F.2d 1511, 1515-17 (11th Cir. 1984) (declining to affirm an ALJ's decision where it was unclear what test the ALJ used in reaching his conclusions and concluding it was not proper to affirm simply because some rationale might have supported the ALJ's conclusions).

13

Accordingly, the Commissioner's decision is hereby **REVERSED and REMANDED for additional proceedings**.[8]

Plaintiff is cautioned, however, that this opinion does not suggest Plaintiff is entitled to disability benefits.  Rather, it speaks only to the process the ALJ must engage in and the findings and analysis the ALJ must make before determining whether Plaintiff is disabled within the meaning of the Social Security Act.  *Phillips v. Barnhart*, 357 F.3d at 1244.

## CONCLUSION

On remand, the ALJ must consider the opinions of all of Plaintiff's examining and treating medical sources, as well as the opinions of non-examining medical sources, and give the proper weight to the testimony and statements of each as required by the law of this circuit.  *See Lewis v. Callahan,* 125 F.3d at 1436*; Sharfarz v. Bowen*, 825 F.2d at 279-80.  In his reevaluation of this case, the ALJ is explicitly directed to consider the evidence that was submitted to the Appeals Council prior to its denial of Plaintiff's request for review.  On the facts of this case, the Court finds sound reason to strictly follow the mandate of *Sharfarz* and suggests the ALJ be required to "state with particularity the weight given to each of the medical opinions."  *See Sharfarz v. Bowen*, 825 F.2d at 279; *accord Vuxta v.*

---

[8]If Plaintiff were to ultimately prevail in this case upon remand to the Social Security Administration, any motion for attorney fees under 42 U.S.C. § 406(b) **must be filed within thirty (30) days** of the date the Commissioner issues a "Notice of Award" letter to the Plaintiff/claimant to award disability benefits.  *See Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1278 n. 2 (11th Cir. 2006) (recognizing under Fed. R. Civ. P. 54(d)(2)(B) the district court may enlarge the time for any attorney to petition for fees and suggesting time be stated in the judgment); *compare with* Fed. R. Civ. P. 54(d)(2)(B) and M.D. Fla. Loc. R. 4.18(a) (both requiring that unless a statute **or court order** provides otherwise, any motion for attorney fees must be filed no later than fourteen (14) days after entry of judgment) (emphasis added). This Order and Opinion does not, however, extend the time limits for filing a motion for attorney fees under the Equal Access to Justice Act.

*Commissioner of Social Security*, 194 Fed. Appx. 874 (11th Cir. 2006).  If the ALJ finds reason to disregard or discount the opinion of a treating or examining physician, he must provide specific reasons for doing so and these reasons must be supported by substantial evidence in the record.  Upon having properly weighed the medical opinion evidence, the ALJ must reassess Plaintiff's RFC in accord with the weight given to the medical opinions.

On remand, the ALJ may reopen the record and accept any additional evidence deemed appropriate.  The Clerk of Court is directed to enter judgment consistent with this Order and Opinion, and thereafter to close the file.

**DONE AND ORDERED** at Jacksonville, Florida this 12th   day of March, 2012.

Copies to all counsel of record
        and *pro se* parties, if any

**THOMAS E. MORRIS**
United States Magistrate Judge